**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**BESSIE MOORE** **PLAINTIFF**

**V.** **CAUSE NO. 3:18-CV-817-CWR-FKB**

**JACKSON PUBLIC SCHOOL DISTRICT**
**BENJAMIN G. TORREY, II** **DEFENDANTS**

**ORDER**

Before the Court is Jackson Public School District's (JPS) *Motion for Summary Judgment*. Docket No. 19. For the following reasons, the Motion is granted in part and denied in part.

## I. Background

Bessie Moore has been a librarian at JPS since August 8, 2000. On August 7, 2017, she filed a charge of discrimination and retaliation against JPS with the U.S. Equal Employment Opportunity Commission (EEOC). In the charge, Moore alleged that after filing a charge against JPS with the EEOC four years prior, JPS removed her from her "test coordinator duties" and transferred her to a different school despite her 15 years of employment at a prior school. She contended that these actions were discriminatory on the basis of her sex and age, as well as retaliatory given her prior EEOC charge.

Moore says the mistreatment continued at the new school. This led her to file a second charge with the EEOC on November 30, 2017, alleging only retaliation. She claimed that JPS subjected her to harassment since September 7, 2017. Specifically,

> On numerous occasions, I have been reprimanded in the presence of others, assigned specific seating in a meeting, micromanaged in assigned tasks, and denied the opportunity to speak in open discussions. Additionally, projects that I am involved are not facilitated. The principal directed me to perform other teacher's responsibilities regarding the [Accelerated Reader] program because they did not have time to do them. I was reprimanded for missing an afternoon function. The behavior that I was subjected to greatly impacted my physical and mental health.

> As a result, I was forced to take Family Medical Leave. I believe I am being treated in this manner as a result of an EEOC complaint (423-2017-02295) that I filed recently.

Docket No. 1-1.

On October 30, 2017, JPS authorized Moore's FMLA request. Her leave technically began on October 6, 2017, with an expected end date of January 26, 2018. Moore, however, was absent from work since September 17, 2017, according to JPS's records. Docket No. 19-4.

Moore returned to work on February 8, 2018, after her leave was extended due to the school district's closure. Docket No. 19-3 at 3. Moore alleges that during her leave, the principal – Defendant Benjamin G. Torrey, II – discarded her furniture and other belongings in her work area. She says that Torrey arranged a meeting in the library with her and the assistant principal on February 8, 2018, where he "boasted that he had rearranged the library; and dared [Moore] to rearrange anything." Moore notes in her complaint that Torrey also changed the locks on one of the entry doors in the library and suggested that he moved a pencil sharpener back to its former location after Moore had moved it.

On February 9, 2018, Moore contends that Torrey and an assistant principal followed her through the building and "peered out the window" to look at her while she made a call at her car. Moore says that her husband came to the school to collect her personal belongings but that Torrey "refused to speak with him, or return any of [her] items; and went in to his office and closed the door."

Moore took several actions in regard to her property. On the night of February 8, 2018, she emailed Gary Hannah – who Moore described as Torrey's "supervisor/[d]ivision leader" – to tell him that Torrey disposed of her personal belongings and to ask for assistance in getting them returned. Docket No. 22-6. That same night, she forwarded her email to Hannah to the EEOC

claiming that the "principal continues to harass me and create a hostile environment." Docket No. 22-12. In her email to the EEOC, Moore asked if she should "amend the charge. . . to include these recent incidences," or if she would need to file an additional charge. The following day, the EEOC informed Moore that it had updated her file to "reflect the alleged retaliatory actions" and provided that it was "not necessary to amend [her] charge as the initial basis filed is retaliation." *Id.* On February 13, 2018, Moore filed a report with JPS's Campus Enforcement seeking its assistance with getting her belongings. Docket No. 22-9. On February 14, 2018, she filed a lawsuit in the Hinds County Justice Court claiming that Torrey had harassed her and disposed of her personal belongings. Docket No. 19-7.

Moore's belongings had yet to be returned when her lawsuit in the Justice Court was dismissed on May 1, 2018. That same day she filed an appeal to the County Court. Docket No. 19-10. On May 9, 2018, the appeal and claims against Torrey were dismissed without prejudice by Hinds County Court Judge Larita Cooper-Stokes. Docket No. 19-12.

On May 4, 2018, JPS's legal counsel sent Moore a letter noting that Moore testified at the Justice Court hearing on May 1, 2018, about two missing personal items: a "dark brown table and black office chair." In the letter, JPS claimed that Torrey searched the school following the testimony, located the two items, and determined they were hers. JPS then stated that, "[w]e are returning these two items to you," and informed Moore to contact Torrey when she was ready to pick them up.

Moore also filed a separate complaint against JPS in the Justice Court, claiming JPS failed to compensate her for time worked during the 2017-2018 school year in accordance with her employment contract and JPS's benefits policy. Docket No. 19-13; *see also* Docket No. 19-17 at 3. The Justice Court dismissed the complaint on August 14, 2018, and Moore appealed it the same

day to the County Court. The trial for the appeal was held before Judge Cooper-Stokes on April 9, 2019. After significant testimony and review of Moore's employment contract and JPS policy, Judge Cooper Stokes ordered judgment in Moore's favor and an award of $284 in an order entered on June 3, 2019. Docket No. 19-16.

As to Moore's EEOC charges, the EEOC dismissed the August 7, 2017, charge on March 30, 2018, and issued Moore a right-to-sue letter that same day. Docket No. 19-8. The November 30, 2017, charge was dismissed on August 27, 2018, and the right-to-sue was provided to Moore the same day. Docket No. 1-2. In both, the EEOC provided the following reasoning for its dismissal:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

Docket Nos. 1-2, 19-8.

Moore brought this action *pro se* on November 21, 2018, alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 and Mississippi Code § 97-17-43.[1] She seeks damages for "the loss of enjoyment, utility and functionality of personal and work-related supplies and equipment" and "the value of loss time from work due to emotional distress and continuous harassment, medical expenses, time and resources expended on legal proceedings." Moore also seeks injunctive relief in the form of an order prohibiting JPS "from condoning workplace aggression and hostilities against [Moore] through its officers."

JPS now moves for summary judgment. It argues that any claims stemming from Moore's August 7, 2017, complaint are time-barred; that Moore has failed to allege a prima facie case of

[1] The Mississippi statute Moore provided in her complaint appears to be a criminal statute that is not cognizable here. However, the Court will not take up this issue at this time since it has not been raised by either party

retaliation under Title VII; and that Moore's damages claims are barred by the doctrines of res judicata and collateral estoppel.

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party." *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citation omitted). A fact is material if it is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. Fed. R. Civ. P. 56(c)(1). That evidence may include "depositions, . . . affidavits or declarations, . . . or other materials." *Id.* When evaluating a motion for summary judgment, a court refrains from making credibility determinations and views the evidence in the light favorable to the non-movant. *Strong v. Dep't of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

## III. Discussion

Each of Moore's claims will be considered in turn.

### A. Title VII Discrimination and Retaliation Claims from August 7, 2017

JPS seeks summary judgment on the discrimination and retaliation claims based on Moore's August 7, 2017, EEOC charge of discrimination. Moore, however, contends that the only EEOC charge before the Court is the one filed on November 30, 2017.

Moore is correct. Her complaint in this action only pleads claims relating to the November 30, 2017, EEOC charge. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). Since the alleged claims for which JPS seeks summary judgment were "not raised in the complaint," they are "not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005).

**B. Title VII Retaliation Claims from November 30, 2017**

"To state a claim for retaliation under Title VII, a plaintiff must show that (1) [s]he engaged in conduct protected by Title VII; (2) [s]he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (quotations and citations omitted). JPS contends that no materially adverse action occurred.

In retaliation cases, a materially adverse action is an action which "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations and quotations omitted). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67. "Trivial harms," such as "petty slights, minor annoyances, and simple lack of good manners," do not rise to the level of a materially adverse action. *Id.* at 68.

In both her complaint and evidence provided by both parties, Moore points to several actions she contends are materially adverse: (1) being reprimanded in the presence of others; (2) being assigned "specific seating in a meeting"; (3) being micromanaged in assigned tasks; (4) being denied "the opportunity to speak in open discussions"; (5) JPS not facilitating projects she was involved in; (6) being directed to "perform other teacher's responsibilities regarding the [Accelerated Reader] program because they did not have time to do them"; (7) JPS removing her

furniture from her work area and refusing to return the furniture for several months despite requests; (8) having other belongings in her work area discarded; (9) Torrey and an assistant principal following her through the school building and "peer[ing] out the window" as she made a call outside; (10) Torrey changing the locks on one of the entry doors in the library; and (11) someone moving a pencil sharpener back to its former location after Moore had moved it.

The majority of Moore's claims cannot be considered materially adverse actions. "[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute" materially adverse actions. *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008). Neither do allegations of micromanaging, *see Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007), having personal items taken from one's desk, *see Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009), having the locks on one's office door changed, *id.*, or being "watched more closely than other employees," *Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 404, 407 (5th Cir. 2007).

JPS, however, fails to cite to any cases where the theft of an employees' furniture or similarly valued property was not materially adverse. The Fifth Circuit has previously held that "having tools stolen . . . without more, do[es] not constitute [an] ultimate employment decisions, and therefore [is] not the required adverse employment action[]." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997). "But the Supreme Court in *Burlington Northern* specifically abrogated the reasoning in . . . *Mattern*, holding that the application of Title VII's retaliation provision is not limited to a narrow definition of an 'adverse employment action' that includes only actions affecting the terms, conditions or status of employment." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 346 (6th Cir. 2008) (citing *Burlington*, 548 U.S. at 68).

JPS has the burden of proving that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While it has met that burden as to the majority of Moore's allegations, JPS has failed to meet that burden as to Moore's claim of retaliation due to the removal of and refusal to return her furniture.

**C. Damages Claims**

JPS then argues that Moore's damages claims are barred under the doctrines of res judicata and collateral estoppel. Regarding Moore's requested damages relating to Torrey's alleged theft of Moore's property, JPS cites to Moore's Justice Court lawsuit against Torrey, which was eventually dismissed without prejudice by the County Court. As to Moore's claims for damages due to "the value of loss time from work due to emotional distress and continuous harassment," JPS points to Moore's Justice Court action claiming breach of contract, for which the County Court awarded her $284 on appeal.

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (citation and quotations omitted). Under Mississippi's res judicata doctrine, "[a] final judgment on the merits of an action precludes the parties and their privies from relitigating claims that were or could have been raised in that action." *Robinson v. Hosemann*, 918 So. 2d 668, 671 (Miss. 2005).

"For the bar of res judicata to apply in Mississippi there are four identities which must be present: (1) identity of the subject matter of the action; (2) identity of the cause of action; (3) identity of the parties to the cause of action; and (4) identity of the quality or character of a person against whom the claim is made." *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 232 (Miss. 2005) (citation omitted). "[T]he absence of any one of the elements is fatal to the defense

of res judicata." *Id.* "The burden of proving res judicata as a defense is on the defendant." *Anderson v. LaVere*, 895 So. 2d 828, 832 (Miss. 2004).

As to collateral estoppel, the Mississippi Supreme Court has held:

> The doctrine of collateral estoppel is used to preclude parties "from relitigating the specific issues actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." The parties do not have to be the exact parties that litigated the former action; instead, if the nonparty can prove that he was in privity with the parties in the former action, then collateral estoppel may be applied. For a nonparty to be considered in privity, the nonparty must be "connected with [the former action] in their interests [and be] affected by the judgment with reference to interest involved in the action, as if they were parties." Even if the nonparty is considered to be in privity, the issues must be "the specific issues actually litigated."

*Baker & McKenzie, LLP v. Evans*, 123 So. 3d 387, 401–02 (Miss. 2013) (citations omitted). "Where the elements of estoppel have been satisfied, the court's inquiry is not 'whether the court's order was erroneous, but only that it was the final judgment of the case.'" *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 642 (Miss. 1991) (citation omitted).

**1. Prior Suit Against Torrey**

As to Moore's action against Torrey, the doctrines of res judicata and collateral estoppel do not apply.

Generally, when a suit in Justice Court is decided on the merits, "it shall be a bar to a recovery for the same cause of action or setoff in any other suit." Miss. Code Ann. § 11-9-137. However, since an "appeal actually consists of a trial de novo," the justice court judgment that was appealed is no longer considered final for the purposes of res judicata or collateral estoppel. *Smith v. Malouf*, 597 So. 2d 1299, 1302 (Miss. 1992); *see also Manning v. Westover Apartments, LLC*, No. 3:11-CV-73-DPJ-FKB, 2012 WL 28577, at *3 (S.D. Miss. Jan. 5, 2012) (applying Mississippi law). Upon Moore's direct appeal of the Justice Court decision, the Justice Court judgment lost

preclusive effect since such appeals are conducted de novo. *See* Miss. Code Ann. §§ 11-51-91; 11-51-81.

The County Court's judgment also lacks preclusive effect because it was entered "without prejudice." "[D]ismissal without prejudice is not an adjudication on the merits, and therefore, res judicata does not apply." *Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 25 (Miss. 2015) (citations omitted).

**2. Prior Suit Against JPS**

The same conclusion holds as to Moore's prior breach of contract suit against JPS, this time because the "the identity of the cause of action" is not satisfied.

"In order for res judicata . . . to take effect, the litigation must involve the same claim premised upon the same body of operative fact as was previously adjudicated." *Harrison*, 891 So. 2d at 234. "[W]hen a case involves several different legal theories which apply to one claim . . . [the Mississippi Supreme Court] has looked past the legal bases asserted and relied more on the factual and transactional relationship between the original action and the subsequent action." *Id.*

In her prior suit, Moore sought pay for (1) days she actually worked during the 2017-2018 school year and (2) sick and personal days she believed she was due under her employment contract as "a full-time employee." Docket No. 19-18 at 9. Moore testified that she was "not asking to be compensated for the days [she] did not work." *Id.*

Here, in contrast, Moore seeks compensation for the days she alleges she was unable to work due to JPS's alleged retaliatory conduct. The "factual and transactional relationship" between these two actions are different. In the first, the cause of action focused on Moore's employment contract with JPS and whether JPS's calculation of her pay was appropriate under the contract and its benefits policy. In the present matter, the facts focus almost exclusively on the alleged

retaliatory conduct, which was never "actually litigated" at Moore's appeal before the County Court. *Baker & McKenzie, LLP*, 123 So. 3d at 402. Here, the calculation of Moore's pay and benefits will be relevant only insofar as an input to calculate any compensatory damages she may be awarded.

Accordingly, res judicata and collateral estoppel are not available.

## IV. Conclusion

JPS's motion is granted in part and denied in part.

**SO ORDERED**, this the 12th day of May, 2020.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE